## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**GARY DANIEL RODGERS, JR. (#700016)**                    **CIVIL ACTION NO.**

**VERSUS**                                                 **21-233-JWD-SDJ**

**JOHN BEL EDWARDS, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 19, 2022.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GARY DANIEL RODGERS, JR. (#700016)**                     **CIVIL ACTION NO.**

**VERSUS**                                                              **21-233-JWD-SDJ**

**JOHN BEL EDWARDS, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint of Gary Daniel Rodgers, Jr., an inmate confined at the Louisiana State Penitentiary in Angola, Louisiana, who is representing himself.[1]  Based on the screening process for such complaints, it is recommended that all claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2) and 1915A except Plaintiff's claim for failure to intervene against Sergeant Dornier, and that supplemental jurisdiction over any state law claims be declined.[2]

## I.    Background

Rodgers filed suit under 42 U.S.C. § 1983 against a multitude of Defendants, including Governor John Bel Edwards, various other public officials, and various prison personnel.[3] Rodgers alleges Defendants violated his Eighth Amendment rights by failing to protect him, failing to intervene, and by acting with deliberate indifference towards his health.[4]  Rodgers also complains that he was issued a disciplinary report based upon false accusations.  Rodgers requests monetary, injunctive, and declaratory relief.[5]

---

[1] R. Doc. 11.  This is the operative complaint. *See* R. Doc. 9.

[2] Because Rodgers is proceeding *pro se*, he was provided with an opportunity to amend prior to the issuance of this Report and Recommendation.  R. Doc. 9.  *See Wiggins v. Louisiana State University—Health Care Services Division*, 710 Fed.Appx. 625, 627 (5th Cir. 2017) (*pro se* litigants should ordinarily be offered an opportunity to amend prior to dismissal).  Despite the amendment, the majority of his claims still fail to state a claim.

[3]  R. Doc. 11, pp. 1 & 4.  Defendants include Governor John Bel Edwards, Secretary James Lablanc, Darrell Vannoy, New Roads Mayor, West Feliciana Mayor, St. Francisville Mayor, City of Angola Mayor, Assistant Warden Smith, Col. Wright, Major Ramsey, Ct. Franklin, Ct. Manchester, Ct. Bonnette, Lt. King, Mstr. Srgt. Scott, Srgt. Dornier, and "Camp C Officers at the Time of the Violation."

[4] R. Doc. 11, p. 4-7.

[5] R. Doc. 11, p. 8.

## II.    Law & Analysis

### A.  Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action by a prisoner against a governmental entity or an officer or employee of a governmental entity, or by any other plaintiff who has been granted IFP status, if the Court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.[6]  The statutes impose similar standards for dismissal and are intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.  Dismissal may be made before service of process or before any defendant has answered if the court determines that the claim or action does not pass the screening process.

To determine whether a complaint fails to state a claim under §§ 1915(e) and 1915A, courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[7]  Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[8]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] While the

---

[6] §1915(e) provides a procedural mechanism for dismissal of lawsuits that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis* ("IFP"); §1915A provides a procedural mechanism for dismissal of lawsuits by prisoners against a governmental entity or employee of a governmental entity that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff.   Rodgers was granted permission to proceed *in forma pauperis* on April 28, 2021 (R. Doc. 4), so both statutes apply.

[7] *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (recognizing that the standards for determining whether a complaint fails to state a claim for relief are the same under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A and Fed. R. Civ. P. 12(b)(6).

[8] *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).

[9] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

[10] *Id.*

screening process does give the court the rare power to 'pierce the veil' of the factual allegations,[11] pleaded facts that are merely improbable or strange are not frivolous for purposes of screening.[12] A claim is factually frivolous only if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[13]   A claim is also subject to dismissal if it has no legal basis, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[14]

### B.  All Defendants Except Dornier are Subject to Dismissal for Lack of Personal Involvement

Rodgers was given leave to amend his lawsuit after it was explained to him that he had largely failed to attribute the alleged constitutional violations to any particular Defendants, which is required to state a claim because "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[15]   Rodgers was also given a list of information to include in any amended complaint, including: the specific knowledge any Defendant had regarding the danger posed by the inmate who attacked Rodgers, complaints made to any Defendant before the attack and whether any Defendant was physically present when the attack occurred.[16] Rather than respond by providing the information requested, Plaintiff's amended complaint provides little in the way of additional information regarding the personal participation of any Defendant other than Dornier.[17]

Supervisory officials may be held liable under § 1983 only if they actively participate in acts that cause the constitutional violation or implement unconstitutional policies that causally

---

[11] *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).
[12] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[13] *Denton*, 504 U.S. at 33, (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).
[14] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[15] R. Doc. 9; *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).
[16] R. Doc. 9.
[17] R. Doc. 11.

result in plaintiff's injury.[18]  An allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior*, *i.e.*, because s/he is in charge of a particular area of the prison, is insufficient to state a claim under § 1983.[19]  If the supervisory official did not personally participate in the alleged constitutional violation, an inmate plaintiff must be able to show that the supervisor breached an affirmative duty specially imposed by state law or that the constitutional violation occurred because a subordinate implemented the supervisor's affirmative wrongful policies.[20]  The policy must be so deficient that it is considered the moving force behind the constitutional violation.[21]

Presuming Rodgers is complaining that some Defendant named herein implemented a policy that led to a constitutional violation, he has consistently failed to adequately describe the alleged policy that exists or who implemented the policy, despite the opportunity to amend.  His complaint, as amended, still only contains a conclusory allegation that he is suing the Defendants "for a adopted custom policy…violating DOC policy."[22]  This conclusory statement is insufficient to state a claim that an unconstitutional policy existed, let alone any policy so deficient that the policy itself caused the alleged constitutional violation.[23]  Accordingly, all Defendants with the exception of Dornier are subject to dismissal for lack of personal involvement.[24]  Accordingly,

---

[18] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

[19] *See Iqbal*, 556 U.S. at 676, (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability.").

[20] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[21] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

[22] R. Doc. 11, p. 6.

[23] It is, in fact, unclear what violation Rodgers is associating with any policy because he complains about "pandemic policy" and also of a policy to violate "D.O.C. policy in fully restraining offenders in the cell blocks."  R. Doc. 11, pp. 4 & 6.  To the extent Rodgers is complaining that the general policy of the Louisiana Department of Public Safety and Corrections in dealing with COVID-19 was unreasonable, it is discussed below.

[24] Though Rodgers included allegations against Defendant Manchester by name, the only allegation in the Complaint against Manchester is that he ordered Dornier to relocate Rodgers to another cell.  R. Doc. 11, p. 4.  The mere order to transfer Rodgers to another cell does not demonstrate personal involvement in the only viable constitutional violation at issue here—the failure to intervene.  Rodgers does not provide any facts to indicate that Manchester was

Plaintiff's claims against all of the "government officials," including "Camp C Officers at the Time of the Violation" with the exception of Dornier, are subject to dismissal, as he has failed to establish the personal liability of any Defendant other than Dornier.

### C. Rodgers Cannot State a Claim for the Conditions of his Confinement Arising from COVID-19

To the extent Rodgers alleges a lack of policies, in general, to adequately mitigate the risks of COVID-19, he still fails to state a claim. Rodgers's claim regarding being moved without a mask constitutes a complaint regarding the conditions of his confinement arising under the Eighth Amendment. In evaluating a conditions of confinement claim, it is appropriate to apply the deliberate indifference standard articulated in *Estelle v. Gamble*.[25] "To establish deliberate indifference…, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.[26] The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones."[27] At a minimum, prison officials "must provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care."[28] They cannot deprive prisoners of the

---

in close enough proximity to him when the alleged attack occurred to have intervened. Indeed, it appears Dornier was the only officer in close proximity when the alleged attack occurred, as Rodgers states "[Dornier] watch without intervening until the ranking officers arrived." R. Doc. 11, p. 5. Similarly, though Rodgers attempts to generally name "Camp C Officers at the Time of the Violation," he does not provide any facts to demonstrate the personal involvement of these officers, and a § 1983 action must be filed against an actual identified person, not a department or its staff, generally. *See Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing *August v. Gusman*, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); *Staritz v. Valdez*, No. 06-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); *Allen v. Gusman*, No. 05-1633, 2006 WL 286007, at *3, n. 8 (E.D. La. Feb. 2, 2006) ("Medical Staff is not a juridical entity capable of being sued; the specific medical personnel must be named).

[25] 429 U.S. 97 (1976). *See Wilson v. Seiter*, 501 U.S. 294 (1991).

[26] *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

[27] *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted).

[28] *Id.*

"basic elements of hygiene" or the "minimal civilized measure of life's necessities."[29] Prison conditions cannot inflict "wanton and unnecessary" pain.[30]

Rodgers complains of the "lack" of "pandemic policy," which resulted in his being moved to another cell without a facemask.[31]  Rodgers does not point to any Defendant as the guilty party for the lack of policy, and even if he identified a Defendant responsible for not implementing a policy, his claims still fail.  As this Court and numerous other federal courts have recognized, the COVID-19 pandemic has caused a global crisis and poses extraordinary and unique public health risks, which are particularly pronounced in jails.[32]  Further, prison officials are undoubtedly aware of the serious risk COVID-19 poses to the incarcerated population, including Rodgers.

However, Rodgers has failed to provide any support for his assertion regarding "lack" of a "pandemic policy," and a review of the LDPS&C policies demonstrates that the LDPS&C has worked actively at implementing policies to prevent the spread of COVID-19.[33]  The efforts the LDPS&C has taken to mitigate the spread of COVID-19 are extensive.  The following is an illustrative list of ongoing mitigation measures taken by the LDPS&C to mitigate the spread of COVID-19.  The LDPS&C has implemented heightened disinfectant/cleaning protocols at every prison facility; mandated daily screening of all DOC employees prior to entrance; requiring all

---

[29] *Palmer v. Johnson*, 193 F.3d 346, 352-53 (5th Cir. 1999) (quotation marks omitted).

[30] *Id.* at 351.

[31] R. Doc. 11, p. 4.

[32] *See, e.g.*, *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091, *3 (N.D. Tex. May 20, 2020); *Gumns v. Edwards*, Civil Action No. 20-231, 2020 WL 2510248, *1 (M.D. La. May 15, 2020).

[33] This Court is permitted to take judicial notice of governmental websites, (*In re Katrina Canal Breaches Consol. Lit.,* 533 F.Supp.2d 615 (E.D.La.2008) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites." (quotations omitted))) and the Department of Public Safety and Corrections has posted on its website a summary of its efforts to respond to the threat of COVID-19.  LDPS&C's policies for dealing with COVID-19 are available at https://doc.louisiana.gov/covid-19-information/.  Further, courts have taken judicial notice of such evidence in cases dismissing claims pursuant to 28 U.S.C. §§ 1915 and 1915A. *See Tavares v. LaSalle Corrections*, Civil Action No. 17-289, 2018 WL 2452977 (W.D. Tex. May 31, 2018); *Blake v. Tanner*, Civil Action No. 20-1250, 2020 WL 3260091 (N.D. Tex. May 20, 2020).  Thus, this Court may consider the LDPS&C policies regarding COVID-19 in determining the merits of the Rodgers's claims.

DOC employees to wear a mask at all times while on premises of any state facility; movement reduction measures to reduce risk of exposure and transmission, including intermittent suspended visitation, limited dining areas, limited recreation space, and limited transfers.[34]  Specifically regarding Rodgers's complaint regarding lack of a facemask at the time he was moved from his cell, the LDPS&C policies clearly indicate that two cloth facemasks were distributed to each inmate, and these masks are replaced as needed.[35]  Rodgers does not provide any explanation as to why he did not have his masks when moved.  The Court also notes that Rodgers does not indicate that he suffered any harm as a result of being moved without a facemask.  The conclusory allegations provided by Rodgers fail to state a claim, especially considering the abundance of information demonstrating that "pandemic polic[ies]" have been implemented and have measures directed squarely at the use of facemasks.

### D.  Rodgers has Failed to Establish a Claim for Failure to Protect

Because Rodgers was attacked by another inmate, it appears he may be attempting to allege a claim of failure to protect.  The same deliberate indifference standard as applies to conditions of confinement claims, as stated above, should be applied in evaluating a failure to protect claim. This term has been defined as including an element of "subjective recklessness" as used in the criminal law.[36]  An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[37]  A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk

---

[34] See "LA. DPS&C Ongoing COVID-19 Response" available at https://doc.louisiana.gov/covid-19-information/ (last accessed April 26, 2022).
[35] Id.
[36] Farmer, 511 U.S. at 837.
[37] Id.

by failing to take reasonable steps to avoid it.[38]  In other words, for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[39]  Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[40]  Deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[41]

Though Rodgers was, unfortunately, attacked by another inmate, Rodgers has failed to provide any facts to indicate that any prison official, especially any Defendant named herein, knew that the inmate attacker posed any risk to Rodgers prior to the attack.[42]  Though Rodgers alleges in a conclusory fashion that he was placed in another cell with an inmate with a "violent background," that is insufficient to demonstrate deliberate indifference.[43]  Deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[44]  Because, even after leave to amend, Rodgers has failed to provide any facts to demonstrate that any Defendant knew of a specific risk posed to Rodgers by this other inmate, Rodgers cannot state

---

[38] *Id.* at 847.

[39] *Johnston*, 786 F.2d at 1259.

[40] *Id.* at 838.  *See also, Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001), (citing *Farmer*, 511 U.S. at 838).

[41] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019).  *See also Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

[42] *See* R. Doc. 11.

[43] R. Doc. 11, p. 5.

[44] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019).  *See also Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

a claim for failure to protect. Accordingly, this claim is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

### E. Rodgers Cannot State a Claim for Failure to Follow Prison Regulations

Rodgers alleges Dornier failed to follow prison regulations, which appear to require both the inmate in the cell and the inmate being moved into the cell be fully restrained.[45] The failure to follow prison rules and regulations does not itself amount to a constitutional violation.[46] Thus, Rodgers cannot state a claim for Dornier's alleged failure to follow prison protocol. Further, the failure to restrain both inmates is an instance of mere negligence and does not rise to the level of a constitutional violation.[47] Accordingly, Rodgers's claims for failing to restrain both inmates prior to transfer is subject to dismissal.

### F. Rodgers Cannot State a Claim for the False Disciplinary Report

The law is clear that the issuance of one or more false disciplinary reports, even when the report results in punishment, is not a constitutional violation.[48] Moreover, the procedures governing prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an unusual and significant

---

[45] R. Doc. 11, pp. 4 & 6.
[46] *Lewis v. Secretary of Public Safety and Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal citations omitted)). *See also Humphrey v. Banks*, 777 Fed.Appx. 767, 768 (5th Cir. 2019) (the plaintiff "has not shown that the district court erred by dismissing for failure to state a claim his claim that prison officials violated an internal policy by assigning him to a unit that housed gang-affiliated inmates. Violations of prison rules or regulations, without more, do not give rise to a cause of action.").
[47] *Mitchell v. Thomas*, No. 17-90, 2018 WL 4572667, at *7 (M.D. La. Sept. 24, 2018) ("at most, Mitchell has alleged a negligence claim against Sgt. Roberts for his alleged failure to follow proper LSP Protocol by failing to restrain Tillman while escorting him to and from the showers....a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983.").
[48] *See Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984).

deprivation (evaluated in the context of prison life).[49]  It appears that the disciplinary report at issue here was dismissed without punishment.[50]  Thus, this claim is subject to dismissal.

### G. Rodgers has Stated a Claim for Failure to Intervene against Dornier with the Noted Exceptions

Rodgers alleges that, while he was being attacked by the other inmate, Dornier just watched without intervening.[51]  A prison guard has a duty to intervene and attempt to end an assault on an inmate.[52]  However, officials who fail to prevent an injury inflicted by fellow prisoners are only liable if they act with deliberate indifference.[53]  When a prison official is *present* at the time of an assault, she is deliberately indifferent to the inmate's safety, unless there is "evidence justifying the correctional officer's failure to intervene, such as when intervention would threaten the health and safety of all concerned (*i.e.*, the guard is alone and unarmed or another guard has been taken hostage)."[54]  Regardless of whether the Eighth Amendment imposes an obligation on a prison official to intervene directly in an inmate fight when doing so would place him or her in danger of physical harm, it demands that he or she take *some* action to halt the violence.[55]

Though immediate intervention is not required, an official is required to take some steps to halt inmate on inmate violence.  The case law consistently holds that deliberate indifference does not exist in situations where officers have taken some steps to halt the violence, including giving

---

[49] *Sandin v. Conner*, 515 U.S. 472, 486 (1995).

[50] R. Doc. 11, p. 6 ("charged with a rule 10 simple fighting and then being dismissed in DB court.").

[51] R. Doc. 11, p. 5.

[52] *Weathington v. U.S.*, No. 10-359, 2011 WL 1211509 at * 9 (W.D. La. March 3, 2011).

[53] *Id.*, (citing *MacKay v. Farnsworth*, 48 F.3d 491 (10th Cir. 1995)).

[54] *Id.*, (citing *Williams v. Mueller*, 13 F.3d 1214, 1215-16 (8th Cir. 1994)).

[55] *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (comparing negligence to deliberate indifference in a failure to intervene context and implying that standing by and allowing an attack to proceed constitutes deliberate indifference). "Despite its concern with the Fourteenth Amendment's due process clause, *Davidson* constitutes part of Eighth Amendment jurisprudence." *Payne v. Collins*, 986 F.Supp. 1036, n. 59 (E.D. Tex. June 25, 1997).

verbal orders,[56] leaving to get help,[57] and leaving to obtain tools, such as weapons and teargas, to halt the violence.[58]  Reading the amended complaint liberally, Dornier did nothing but stand by and watch.  Accordingly, at this stage, the claim should be allowed to proceed.[59]

However, Plaintiff's claim against Dornier for monetary relief against Dornier in his official capacity is also subject to dismissal.  42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[60] In addition, in *Hafer v. Melo*,[61] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[62] Accordingly, Plaintiff's § 1983 claims asserted against Dornier in his official capacity for monetary damages is subject to dismissal.

---

[56] *Verette v. Major, et al.*, Civil Action No. 07-547, 2008 WL 4083032 (W.D. La. Aug. 25, 2008) (When an inmate attacked another, officers gave direct verbal orders to the inmate attacker to put down the tool he was using as a weapon, and the inmate obeyed the verbal orders.  The Court found the officers were entitled to qualified immunity).
[57] *See Rios v. Scott*, 100 Fed.Appx. 270 (5th Cir. 2004) (an officer did not immediately intervene in an attack when it commenced but ran to get help).
[58] *See Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006) (officers did not immediately intervene in an attack but ran to alert other officers of an ongoing attack and to obtain weapons and tear gas).
[59] Though qualified immunity is not discussed in this Report because it is an affirmative defense (*Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009)), raising qualified immunity on a motion to dismiss would not defeat Plaintiff's failure to intervene claim because, as discussed above, it was clearly established at the time of this incident that an officer may not stand by and do nothing while an inmate is being attacked, and the complaint, read liberally, indicates this is exactly what happened.
[60] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[61] 502 U.S. 21 (1991).
[62] *Id*. at 25.

### H.  Rodgers has Not Stated any Other Claims

Without providing factual support, Rodgers claims Defendants, generally, have acted with deliberate indifference, perpetrated "cruel and unusual punishment, unsanitary practices, obstruction of justice, falseifing [sic] documents, intentional infliction of emotional distress on a mental health inmate and violating the American Disability Act because I belong in a classified mental health program while being treated for mental illness."[63]  Rodgers has only provided these conclusory assertions and has provided no facts to support the finding of any constitutional violations based upon these assertions.[64]  Accordingly, to the extent Rodgers sought to bring any claims arising from these facts, such claims are also subject to dismissal.

### I.  Exercise of Supplemental Jurisdiction Should be Declined

To the extent that Rodgers seeks to have the Court exercise supplemental jurisdiction over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[65]  Having recommended that the majority of Rodgers's federal claims be dismissed for failure to state a claim, it is further recommended that the exercise of supplemental jurisdiction be declined.

---

[63] R. Doc. 11, p. 6.
[64] For example, he has not provided any facts to support the assertion that he is a qualified individual under the with Disabilities Act.  42 U.S.C. § 12132.
[65] 28 U.S.C. § 1367.

## <u>RECOMMENDATION</u>

**IT IS RECOMMENDED** that all of Plaintiff's claims be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim and as legally frivolous with the exception of Plaintiff's claim for monetary damages for failure to intervene against Unknown Dornier in his individual capacity.

Signed in Baton Rouge, Louisiana, on May 19, 2022.


_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**